### STATE OF CONNECTICUT *v.* SHAWN HENNING (13765)

SHEA, CALLAHAN, GLASS, COVELLO and BERDON, Js.

Argued September 27—decision released November 19, 1991

*Carl D. Eisenman,* public defender, for the appellant (defendant).

*Michael E. O'Hare,* special assistant state's attorney, with whom, on the brief, were *Frank Maco,* state's attorney, and *David Shepack,* assistant state's attorney, for the appellee (state).

GLASS, J. After a jury trial, the defendant, Shawn Henning, was convicted of felony murder in violation of General Statutes § 53a-54c.[1] The trial court sentenced the defendant to a term of fifty years, and this appeal followed.

On appeal, the defendant claims that the trial court improperly: (1) denied his motion for judgment of acquittal because the evidence was insufficient to prove beyond a reasonable doubt that the defendant was guilty of felony murder in violation of General Statutes § 53a-54c; and (2) failed to charge the jury on burglary in the third degree[2] as a lesser offense included in the charge of felony murder. We affirm the judgment of conviction.

The jury could reasonably have found the following facts. During the early morning hours of November 29, 1985, the defendant and two companions, Ralph

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit . . . burglary . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[2] "[General Statutes] Sec. 53a-103. BURGLARY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein.

"(b) Burglary in the third degree is a class D felony."

"Ricky" Birch and Tina Yablonski, stole a 1973 brown Buick Regal from an automobile repair shop in Brookfield. That evening, they drove the Buick to New Hampshire. The Buick was damaged and its muffler was lost in New Hampshire. Due to the loss of the muffler, the car's engine was very loud.

On Sunday, December 1, 1985, the defendant, Birch and Yablonski drove the Buick from New Hampshire to Danbury. They arrived in Danbury in the early evening and went to the residence of a friend, Douglas Stanley. While at Stanley's residence, the defendant and Yablonski "freebased" cocaine. The defendant, Birch and Yablonski left Stanley's apartment between 11:10 and 11:20 p.m. and drove to New Milford in the Buick. The defendant and Birch dropped off Yablonski at her home on Aspetuck Road at approximately 11:55 p.m. The defendant and Birch drove to a residential area approximately two miles away, driving north on Aspetuck Avenue to its intersection with Marwick Manor.[3] They turned into Marwick Manor and parked the car between 12:10 and 12:30 a.m. on December 2. The defendant and Birch then walked a short distance to the house at 74 Aspetuck Avenue, on the corner of Aspetuck Avenue and Marwick Manor. They entered the house through the back door, which was unlocked. Everett Carr, a sixty-five year old man who lived with his wife and daughter, was alone in the house. Carr's wife was out of town and his daughter had gone out for the evening at approximately 9:30 p.m. Carr encountered the defendant and Birch in the hallway adjacent to the kitchen on the first floor. A struggle ensued, and either the defendant or Birch went to the kitchen and obtained a carving knife. During the continued struggle, Carr was stabbed repeatedly, which resulted in his death. The defendant and Birch then

___

[3] Testimony at the trial indicated that Aspetuck Road and Aspetuck Avenue are distinct roads.

searched the house for valuables, taking some jewelry, a videocassette recorder and several other small items. They left the house and drove away in the Buick between 12:30 and 1 a.m. The defendant and Birch returned to the defendant's home in New Milford between 2 and 4:20 a.m. Carr's daughter discovered her father's body when she returned home between 4 and 4:30 a.m. on December 2.

I

The defendant's principal claim on appeal is that the evidence was insufficient to sustain the jury's verdict finding him guilty of felony murder in violation of General Statutes § 53a-54c. This court has consistently employed a two-part analysis in reviewing a challenge to the sufficiency of the evidence. *State* v. *Famiglietti,* 219 Conn. 605, 609–10, 595 A.2d 306 (1991). We first review the evidence in the light most favorable to sustaining the guilty verdict. *State* v. *Tweedy,* 219 Conn. 489, 500, 594 A.2d 906 (1991). We then determine, upon the facts thus established and the inferences reasonably drawn therefrom, whether any rational trier of fact could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. Id. "We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. Id.

In undertaking the foregoing analysis, the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence.

*State* v. *Grant,* 219 Conn. 596, 600, 594 A.2d 459 (1991); *State* v. *Tweedy,* supra. "It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981). After a review of the record, we conclude that the jury could reasonably have determined that the cumulative effect of the evidence was sufficient to establish beyond a reasonable doubt that the defendant committed the crime of felony murder.

The defendant specifically claims that: (1) the lack of scientific or forensic evidence prevented the state from meeting its burden of proof; (2) his actions in the days following the crime were more consistent with innocence than with guilt; and (3) statements he made to his grandmother and a friend in the months after the crime were consistent with his innocence. Viewing the evidence in the light most favorable to upholding the verdict, as we must, we conclude that the evidence was sufficient.

The defendant first focuses on the lack of forensic or scientific evidence in the state's case. Since direct and circumstantial evidence have equal probative value, however, the absence of forensic or scientific evidence does not make the evidence insufficient per se. *State* v. *Grant,* supra, 600. A review of the record reveals the following evidence: First, two distinct sets of footwear imprints in the blood of the victim were found at the scene of the stabbing. There was uncontroverted expert testimony from Henry C. Lee, M.D., director of the state forensic laboratory, that the imprints were made during a struggle before the victim collapsed to the floor. The same two imprints were tracked in the victim's blood into areas of the house where items of personal property were missing. In addition, the defendant's former girlfriend, Tina Yablonski, testified that the defendant and Birch drove in the direction of

the victim's house shortly before a very loud car was heard pulling into Marwick Manor, a few hundred feet from the victim's house. The testimony of two Marwick Manor residents supported Yablonski's testimony regarding the direction from which the car arrived.[4] The two residents heard the car park on Marwick Manor, and then heard it start up again approximately one half hour later. One witness testified that he heard the car "speed" up the hill when it drove away and that it was out of sight within the one minute it took him to get to the window. When viewed in conjunction with the other evidence presented, the foregoing evidence, while largely circumstantial, was ample to support the jury's verdict.

The defendant next contends that his actions in the days immediately following the crime are more consistent with innocence than with guilt. " '[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. . . . *State* v. *Tatem,* 194 Conn. 594, 598, 483 A.2d 1087 (1984); *State* v. *Foord,* [142 Conn. 285, 294, 113 A.2d 591 (1955)].' *State* v. *Dumlao,* 3 Conn. App. 607, 616–17, 491 A.2d 404 (1985)." *State* v. *Grant,* supra, 604. The jury may draw such inferences from the evidence or facts established by the evidence as it deems to be reasonable and logical. Id. The jury reasonably and logically could have inferred the defendant's consciousness of guilt from his actions and statements to police after the murder.

Tina Yablonski testified that she, the defendant and Birch had two discussions about the murder during

---

[4] Two witnesses, Alice Kennel and Brian Church, heard the car pull into Marwick Manor from their second floor bedrooms at 16 and 68 Marwick Manor, respectively. Kennel described the car as "terribly noisy," while Church referred to a "very loud" muffler sound.

which the defendant expressed concern about being a suspect.[5] The defendant agreed to go along with a fabricated story regarding the group's movements during the late evening hours of December 1 and the early morning hours of December 2, 1985.[6] During these discussions, the defendant told Birch and Yablonski that they all had to "get [their] stories straight."[7] The defendant told the story agreed upon to state police detective Patrick McCafferty on December 4, 1985.

On December 5, 1985, the defendant hid the Buick in heavy underbrush near the reservoir in New Milford. After the police, with Birch in the car, encountered the defendant walking on a nearby road, he led them to where the car was hidden. Later that day, the defendant spoke with state police detective Scott O'Mara, and claimed that he had not told McCafferty about the car on December 4, because the car was stolen. The defendant told O'Mara that he, Birch and Yablonski had left Stanley's apartment in Danbury on the morning of December 2, 1985, between 12:30 and 2:30 and had driven to Yablonski's house. He said that he and Birch had then gone to either his father's house or the reservoir.[8] O'Mara testified that, when he showed the defendant a picture of the victim, the defendant indicated that he recognized the victim because of his

[5] According to Yablonski, on one of these occasions the defendant said: "What if we get caught? What if they suspect us?"

[6] The defendant, Birch and Yablonski agreed to tell the police that they had left Douglas Stanley's apartment in Danbury between 12:30 and 1 a.m. on December 2, 1985, and had hitchhiked from there to New Milford. In his trial testimony, the defendant admitted that he had agreed to tell a false story to the police, and that he had in fact done so.

[7] The defendant admitted having said words to this effect.

[8] The defendant told a different story at trial. He testified that, after leaving the Stanley residence in Danbury at approximately 11:30 p.m., he, Birch and Yablonski stopped for approximately forty-five minutes to smoke cocaine. After the defendant and Birch drove Yablonski to her house, they drove to two different locations in New Milford to siphon gas. They then returned to the defendant's father's house.

tattoos, even though no tattoos were visible in the photograph. The defendant said he might have passed the victim on the street. When asked to theorize about what had happened, the defendant referred to the manner of the victim's death, despite not having been informed of it by O'Mara.[9]

On December 9, 1985, the defendant again spoke with McCafferty. McCafferty confronted the defendant with the conflict between his account of when he, Birch and Yablonski had left the Stanley residence and the account of Effie Coates, the woman who lived with Douglas Stanley. According to McCafferty, the defendant then said: "I have to remember where I was. I know I was with Ricky and Tina." McCafferty also testified that the defendant's leg began to shake violently when McCafferty told him that residents at Marwick Manor had heard the Buick on the night of the murder and that the police knew where he had parked and turned around. According to McCafferty, the defendant then stated that he, Birch and Yablonski may have turned around in the victim's driveway. When McCafferty inquired how the defendant had entered the victim's house, the defendant responded: "Tina and I did not go into the house." McCafferty then asked the defendant whether he was saying that Birch had entered the house, to which the defendant responded that McCafferty would have to ask Birch. Finally, the defendant twice denied having killed anyone. From the evidence of the defendant's actions and statements to police after the crime, including the defendant's own testimony, the jury was entitled to infer consciousness of guilt and firsthand knowledge of the murder.

Finally, the defendant asserts that statements he made regarding the crime to his grandmother and a

---

[9] The defendant told O'Mara that he thought someone had interrupted a burglary and that it would have been sufficient to knock out the victim rather than "slice" him.

friend do not support his conviction. The jury heard testimony from the defendant's grandmother, Mildred Henning, and a friend, Timothy Saadloff, regarding statements the defendant made to them after the crime. Mildred Henning testified that she had received a telephone call from the defendant in early 1986 during which he told her that he was in trouble, that there had been a burglary and an "old man" had been killed. The defendant told her that he was at the scene of the crime but that he did not kill the victim and that someone else had participated in the burglary.[10] She said that the defendant had sounded upset and that they both had cried. Mildred Henning also testified regarding a subsequent conversation she had with the defendant in August, 1987. She testified that, during that conversation, the defendant had rescinded what he had told her previously, saying that he had never told her about the crime. He said that what he had told her earlier was only what the police had alleged against him.

Timothy Saadloff, who described himself as the defendant's best friend, testified that he had received a telephone call from the defendant sometime in 1986. The defendant said that he was in a "little bit of trouble." He told Saadloff that he and a friend had broken into a house, and had surprised the man who lived there, who they thought was not at home. The defendant told Saadloff that the man had been murdered, but that he did not do it and that his friend had done it. Saadloff recalled that the defendant had used the word "stabbing" when referring to how the man had been killed.

[10] The defendant's grandmother testified that the defendant had told her that there was a dog in the area where the man was killed. She recalled the defendant saying during the early 1986 conversation that the dog had been killed. A dachshund, belonging to the victim's daughter, was in the house on the night of the crime but was apparently unharmed. In light of the substantial other evidence against the defendant, this inconsistency between the defendant's statement and the facts does not affect the overall sufficiency of the evidence.

The testimony of Mildred Henning and Timothy Saadloff was an integral part of the state's case. While both witnesses testified that the defendant had denied committing the actual killing, the jury could reasonably have inferred from his statements to these witnesses that the defendant was present at the scene of the crime and participated in the burglary. This evidence, when viewed together with all of the evidence presented against the defendant, is sufficient to sustain the jury's verdict finding the defendant guilty of felony murder beyond a reasonable doubt.

## II

The defendant next claims that the trial court improperly failed to charge the jury on burglary in the third degree as a lesser offense included in the charge of felony murder.[11] The information filed by the state charged the defendant with two separate crimes: felony murder in violation of General Statutes § 53a-54c, and burglary in the second degree in violation of General Statutes § 53a-102.[12] At the close of the evidence, the defendant filed a written request to charge with the

---

[11] The defendant raises two additional claims, both of which relate to the claim for a lesser included offense charge. First, the defendant claims that alibi should be treated as a defense, and that there was sufficient evidence of alibi presented to require a jury charge regarding lesser included offenses to felony murder. Second, the defendant asserts that the trial court erred by failing to remedy its error during the defendant's postverdict motion for acquittal. The defendant claims that the trial court should have remedied its error by acquitting him of the felony murder charge and finding him guilty of burglary in the third degree. The defendant abandoned the foregoing claims at oral argument. Moreover, since we find that the trial court properly omitted the lesser included offense instruction, these claims must necessarily fail.

[12] "[General Statutes] Sec. 53a-102. BURGLARY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein.

"(b) Burglary in the second degree is a class C felony."

trial court, requesting that the court instruct the jury on burglary in the third degree as a lesser included offense of burglary in the second degree.[13] The trial court found that the state had failed to present sufficient evidence that the entering or remaining unlawfully in a dwelling occurred at night, and, therefore, did not submit to the jury the second count of the information charging the defendant with burglary in the second degree. The court instructed the jury only as to the felony murder count of the information, instructing on burglary in the third degree as the underlying felony. The defendant did not request a charge on burglary in the third degree as a lesser included offense of felony murder, and took no exception to the charge as given by the trial court.

Since the defendant neither requested an instruction on burglary in the third degree as a lesser included offense of felony murder nor took an exception to the trial court's charge, this court is not bound to review the defendant's claim.[14] For the purposes of this appeal, however, we will treat the issue as properly raised below. We conclude that the requested instruction does not survive the test set forth in *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980).

[13] The relevant portion of the defendant's request to charge read as follows: "3. LESSER INCLUDED OFFENSES. If you find that the State has proven beyond a reasonable doubt that the accused entered or remained unlawfully in the premises with the intent to commit a crime therein, but do not find that the entry or remaining unlawfully took place at night beyond a reasonable doubt then you shall determine whether the accused committed the crime of burglary in the third degree."

[14] Pursuant to Practice Book § 4185, this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." In criminal cases, this section does not bar review where a defendant claims, and this court finds, denial of a "fundamental constitutional right and a fair trial." *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); see also *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). No such claim was raised in the present case.

" 'When we are reviewing a trial court's failure to charge as requested, "we must adopt the version of the facts most favorable to the defendant which the evidence would reasonably support." . . . ' *State* v. *Fuller,* 199 Conn. 273, 275, 506 A.2d 556 (1986)." *State* v. *Havican,* 213 Conn. 593, 595, 569 A.2d 1089 (1990). Under *State* v. *Whistnant,* supra, 588, a defendant is entitled to an instruction on a lesser included offense only if four conditions are met: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." A review of the record reveals that the defendant was not entitled to a jury instruction on burglary in the third degree as a lesser included offense of felony murder because the fourth condition of *Whistnant* was not satisfied.

We need spend little time on the first three conditions of the *Whistnant* test. We will assume, for the purposes of this analysis, that the first condition has been satisfied. It is clear from the information[15] that

---

[15] The first count of the information alleged that "at the Town or City of New Milford on or about 9:30 p.m. on December 1, 1985, and 4:30 a.m. on December 2, 1985, the said Shawn Henning acting with another person, to wit: Ralph 'Ricky' Birch committed and attempted to commit burglary at 74 Aspetuck Avenue, New Milford and in the course of and in furtherance of such burglary or in flight therefrom, the said Shawn Henning or Ralph 'Ricky' Birch did cause the death of another person not a participant in the crime, to wit: Everett Carr in violation of Connecticut General Statutes § 53a-54c."

the defendant could not have committed felony murder without having committed burglary, and, thus, the second condition is also satisfied. Finally, a review of the record reveals some evidence that would justify conviction of the lesser offense, and, therefore, the third condition has been met.[16]

The fourth condition is the critical factor in the present case. We must first differentiate the elements of burglary in the third degree from those of felony murder, and then determine if these elements were sufficiently in dispute to permit the jury consistently to find the defendant innocent of felony murder but guilty of burglary. *State* v. *Whistnant,* supra, 588. General Statutes § 53a-54c, which defines felony murder, provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits . . . burglary . . . and, in the course of and in furtherance of such crime . . . he, or another participant, if any, causes the death of a person other than one of the participants . . . ." Burglary in the third degree is defined in General Statutes § 53a-103 as "enter[ing] or remain[ing] unlawfully in a building with intent to commit a crime therein." Since felony murder, as defined in § 53a-54c, includes the crime of burglary, the only elements that differentiate burglary from felony murder are indicated by the language, "in the course of and in furtherance of such crime . . . he, or another participant, if any, causes the death of a person other than one of the participants."

---

[16] Evidence that would justify a conviction of burglary in the third degree includes: (1) the testimony that a very loud car driving north on Aspetuck Avenue pulled up and parked near the Carrs' residence between 12:10 and 12:30 a.m. on December 2, 1985, and drove away approximately thirty minutes later; (2) evidence that items of personal property were missing from the Carrs' house; and (3) the defendant's statements to Mildred Henning and Timothy Saadloff, in which the defendant admitted participating in a burglary at which a man was killed.

The state presented uncontroverted evidence that the death of Everett Carr was caused during the course of and in furtherance of a burglary by one or more of the participants in the burglary. There was evidence of two distinct sets of footwear imprints in the blood of the victim made during a struggle before the victim collapsed. The injuries sustained by the victim indicated a struggle with one or more assailants. Both footwear imprints were tracked in the victim's blood into rooms where items of personal property were missing, and blood was found on articles of clothing and a dresser drawer. In addition, the defendant's grandmother testified that the defendant had admitted to her in early 1986 that he had been present at a burglary in which an "old man" had been killed. Finally, Timothy Saadloff testified that the defendant had told him in 1986 that he had participated in a burglary, in which a man was stabbed to death by the defendant's friend.

In *State* v. *Morin,* 180 Conn. 599, 602, 430 A.2d 1297 (1980), the defendant was charged with felony murder, and he requested a lesser included offense instruction on burglary or robbery in the first degree. The only issue that was arguably in dispute was the cause of death of the eighty year old victim, who died more than four months after the defendant had severely beaten him while robbing him in his home. Id., 605. This court found that, despite the time lapse between the injuries inflicted by the defendant and the victim's death, the evidence, when viewed in the light most favorable to the defendant, supported the jury's conclusion that the victim's death was caused by the defendant in the course of a burglary or robbery. Id., 609. Thus, the jury could not consistently have found the defendant guilty of the lesser crimes of robbery or burglary and not guilty of felony murder. Id.

In the present case, the causal link between the burglary and the victim's death was more direct than it

was in *Morin* and is undisputed by the defendant. The evidence presented by the state was controverted only by the defendant's trial testimony that he did not participate in either the burglary or the murder. The jury thus had before it evidence that indisputably showed a killing committed in the course of a burglary and sufficient evidence implicating the defendant in the burglary, on the one hand, and the defendant's testimony that he was not present, on the other. The jury was entitled to disbelieve the defendant's testimony.

Participation in the underlying felony is sufficient to sustain a conviction of felony murder.[17] Viewing the evidence in the light most favorable to the defendant, there was simply no evidence to allow the jury *consistently* to find that the defendant had participated in the burglary but was innocent of the felony murder charge. Since the elements that differentiate burglary from felony murder were thus not sufficiently in dispute, the defendant has failed to satisfy the fourth condition of *State* v. *Whistnant,* supra. We therefore conclude that the defendant was not entitled to a jury instruction on burglary in the third degree as a lesser included offense of felony murder.

The judgment is affirmed.

In this opinion SHEA, CALLAHAN and COVELLO, Js., concurred.

---

[17] Participation in the underlying felony may not be enough to sustain a conviction, when a defendant, who was not the only participant in the underlying felony, asserts the affirmative defense that he "(A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." General Statutes § 53a-54c. This statutory defense was not raised by the defendant in the present case.

BERDON, J., concurring. I agree with the majority that the judgment of felony murder should be affirmed. I, however, disagree with the majority's consideration of whether there was sufficient evidence to instruct the jury on the lesser included crime of burglary in the third degree. *Whistnant* makes clear that to be entitled to a jury instruction on a lesser included offense, the party seeking the charge (either the state or the defendant) must request such an instruction. *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). In this case the majority correctly points out the "defendant neither requested an instruction on burglary in the third degree as a lesser included offense of felony murder nor took an exception to the trial court's charge . . . ." Preclusion of a claim of ineffective assistance of counsel, if that be the purpose of the majority in reviewing the merits of the claim, should be left to another day in another forum. Accordingly, I concur in the result.